UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JESSE GAMBLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:15CV198 ACL |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Jesse Gamble brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Gamble's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the matter is reversed and remanded for further proceedings.

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I. Procedural History

Gamble filed his applications for DIB and SSI on January 17, 2013, and January 25, 2013, respectively. (Tr. 119-28.) He alleged that he became disabled on June 15, 2010, due to a combination of mental impairments and back problems. (Tr. 193-94.) Gamble's claims were denied initially. (Tr. 63-69.) Following an administrative hearing, Gamble's claims were denied in a written opinion by an ALJ, dated May 30, 2014. (Tr. 12-21.) Gamble then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on September 15, 2015. (Tr. 8, 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Gamble argues that the ALJ erred by failing to find that Gamble met or equaled Listing 12.05C.

## II. The ALJ's Determination

The ALJ stated that Gamble met the insured status requirements of the Social Security Act through June 30, 2014. (Tr. 14.) The ALJ found that Gamble had not engaged in substantial gainful activity since his alleged onset date of June 15, 2010. *Id.*

In addition, the ALJ concluded that Gamble had the following severe impairments: degenerative disc disease and learning disorder. *Id.* The ALJ found that Gamble did not have an impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In making this determination, the ALJ considered Gamble's mental impairment under the requirements of Listing 12.05, but found that the requirements were not met.

As to Gamble's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. He is able to walk or stand for 6 hours in an 8-hour day and sit for up to 6 hours in an 8-hour day. The claimant can occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant should avoid exposure to extreme heat, unprotected heights, excessive vibrations and hazardous machinery. The claimant is limited to simple tasks that require no more than remedial reading or math. In addition, the claimant should not be required to perform what would be considered high production rate job, although low and medium production rate jobs would be acceptable.

(Tr. 16.)

The ALJ found that Gamble's allegations regarding his limitations were not entirely credible. (Tr. 18.)

The ALJ further found that Gamble is unable to perform any past relevant work. (Tr. 19.) The ALJ noted that a vocational expert testified that Gamble could perform jobs existing in significant numbers in the national economy, such as patching machine operator, linking machine operator, and garment bagger. (Tr. 20.) The ALJ therefore concluded that Gamble has not been under a disability, as defined in the Social Security Act, from June 15, 2010, through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on January 17, 2013, the claimant is not disabled as defined in sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income

protectively field on January 25, 2013, the claimant is not disabled under section 1614(a)(3)(A).

(Tr. 21.)

## III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir.

2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§

404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Gamble argues that the ALJ erred at step three of the sequential evaluation in finding that his impairments did not satisfy the requirements of Listing 12.05C, governing mental retardation.[2]

"[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). "If the claimant wins at the third step (a listed impairment), [t]he claimant must be held disabled, and the case is over." *Jones v. Barnhart,* 335 F.3d 697, 699 (8th Cir. 2003). But "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. 'An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify.'" *McCoy v. Astrue,* 648 F.3d 605, 611–12 (8th Cir. 2011) (quoting *Zebley,* 493 U.S. at 530).

---

[2]Effective September 3, 2013, the Social Security Administration substituted "intellectual disability" for "mental retardation" in the listings. Change in Terminology, 78 Fed.Reg. 46499 (Aug. 1, 2013). Although the ALJ's decision was issued shortly after the change in terminology, the ALJ and the Plaintiff use the term "mental retardation." For the sake of consistency, the Court also uses this term.

To meet Listing 12.05C, a claimant must show "(1) a valid verbal, performance, or full scale IQ of 60[–]70; (2) an additional 'severe' impairment [a physical or other mental impairment imposing an additional and significant work-related limitation of function]; and (3) evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two." *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014) (citing *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006)); *see also* 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.05. The burden is on the claimant to demonstrate that his impairment matches all the specified criteria of a listing. *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013).

The ALJ evaluated Gamble's mental impairment under Listing 12.05C. The ALJ stated that the requirements of Listing 12.05C were not met because Gamble "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 15.) The ALJ provided the following rationale for this determination:

> The claimant has minimal information in [the] file regarding his alleged learning disorder. Further, educational records have test scores that vary widely in consistency (Exhibit 1E) and are not a valid indicator of the claimant's ability to function. Moreover, the claimant is able to perform a wide variety of activities of daily living addressed in detail below that indicate he functions at a higher level than alleged.

*Id.*

As an initial matter, the Court notes that the ALJ found that Gamble's degenerative disc disease was a severe impairment at step two of the sequential analysis. (Tr. 14.) There is, therefore, no dispute that Gamble has a physical impairment imposing an additional and significant work-related limitation of function, to satisfy the second element of Listing 12.05C.

"'[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.'" *Phillips v. Colvin,* 721 F.3d 623, 626 (8th Cir.

2013) (quoting *Muncy v. Apfel,* 247 F.3d 728, 734 (8th Cir. 2001)) (alteration in original). "It is undisputed that '[t]he Commissioner is not required to accept a claimant's IQ scores ... and may reject scores that are inconsistent with the record.'" *Miles v. Barnhart,* 374 F.3d 694, 699 (8th Cir. 2004) (quoting *Clark v. Apfel,* 141 F.3d 1253, 1255 (8th Cir. 1988)) (alterations in original). "An ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior." *Muncy*, 247 F.3d at 733. However, an ALJ must provide legitimate reasons for the decision to disregard an IQ score. *See id.* at 734–35 (remanding because the ALJ relied on the higher of two IQ scores but "neither addressed the discrepancy between [the claimant's] two IQ scores nor discussed what factors called into question the [lower] score's validity"); *Murphy v. Colvin,* Civ. No. 1:12–cv–01099, 2013 WL 4198345, at *4 (W.D. Ark. Aug. 15, 2013) (remanding where the ALJ relied on the higher of two IQ scores without providing reasons why the lower score was invalid; stating, "an ALJ may reject IQ scores that are inconsistent with the record but he must provide a legitimate basis for his decision").

Gamble contends that the ALJ erred in rejecting his IQ scores in the 60 to 70 range because they were consistent with the record, including his school records. The undersigned agrees.

Gamble's educational records reveal the following IQ scores:

(1) In May 1976, when Gamble was seven, Stanford/Binet testing revealed a Full Scale IQ of 68. (Tr. 159.)

(2) In March 1978, Gamble was administered the Wechsler Intelligence Scale for Children-Revised ("WISC-R"), which revealed a Verbal IQ of 74, Performance IQ of 72, and Full Scale IQ of 71.

(3) In In April 1981, WISC-R testing revealed a Verbal IQ of 68, Performance IQ of 74, and Full Scale IQ of 70.

(4) In April 1984,WISC-R testing revealed a Verbal IQ of 58, Performance IQ of 69, and Full Scale IQ of 60.

(5) In May 1987, Gamble was administered Stanford-Binet testing, which revealed the following scores: 64 in Verbal Reasoning, 68 in Quantitative Reasoning, 77 in Short-Term Memory, and 98 in Abstract/Visual Reasoning.

(Tr. 159.)

Gamble's school records reveal he was placed in special education classes. (Tr. 160.) In April 1986, Gamble was "functioning approximately 8 years below his grade level." (Tr. 163.) It was noted that there was "very little gain in last year's results as compared to this year." *Id.* Gamble was classified as "educable mentally retarded" based on "intellectual functioning and adaptive behavior in the mentally deficient range and severe deficits in academic performance." *Id.* He was referred to Vocational Rehabilitation for possible job placement. *Id.* In April 1987, when Gamble was eighteen, testing revealed grade equivalencies ranging from 2.0 to 3.9 in all categories, which included Math Application, Reading Decoding, Spelling, Reading Comprehension, Math Computation, Reading Composite, Math Composite, and Battery Composite. *Id.* It was noted that Gamble would finish a two-year program in machine shop and did well in it. *Id.*

Gamble's school records revealing special education instruction, a classification as educable mentally retarded, and consistent functioning at approximately eight years below grade level are supportive of the low IQ scores he received at the ages of 7, 12, 15, and 18 years old.

Significantly, there is no indication in the record that any examiner questioned the validity of Gamble's low IQ scores.

There is no evidence in the record from an examining mental health professional evaluating Gamble's level of intellectual functioning. The only medical evidence consists of the opinion of state agency medical consultant Scott Brandhorst, Psy.D. (Tr. 53.) On March 25, 2013, Dr. Brandhorst reviewed the record, and found that no medically determinable impairments were established. *Id.* In his narrative explanation, Dr. Brandhorst acknowledged Gamble's history of educable mentally retarded in school for math, language, and life skills; and IQ scores ranging from 64 to 98. *Id.* He stated that Gamble has worked and made over $10,000 in multiple years, although he has had several employers and many jobs of short duration. *Id.* Dr. Brandhorst concluded that additional information regarding Gamble's current functioning is needed to fully evaluate the severity of his allegations, and that the information had not been provided. *Id.*

The ALJ found that Gamble's ability to participate in a vocational program during school, his "fair" work history, and his ability to perform a wide variety of daily activities indicates he functions at a higher level than alleged. As to Gamble's work history, between 1998 and 2010, he earned over $9,000 in only six years. (Tr. 156.) The highest amount he earned in a year was $11,731.72 in 2006, and the lowest amount he earned was $26 in 2008. *Id.*

Gamble's testimony at the administrative hearing provides further insight into his job history and ability to graduate high school. When Gamble was asked by the ALJ why he was unable to work, he testified as follows:

> Because nobody wants to keep me full-time because my back is messed up like it is. They want to talk about me how I be slow and all that stuff. They want to gripe at me cuss me out, and everything else. I can't follow their directions or nothing like that. I can't hardly read.

(Tr. 27.)

Gamble testified that he was able to graduate from high school "with a lot of help. My sisters and all that stuff." (Tr. 27-28.) He stated that he took special education classes, where there were two teachers in each room to help him. (Tr. 33.) Gamble testified that he was unable to read at the time of the hearing. (Tr. 34.) He explained that his father, with whom he lives, reads all of his mail to him because he does not understand it. *Id.* Gamble stated that his niece completed the paperwork required in connection with his disability claim. *Id.*

With regard to his work history, Gamble testified as follows:

When I do work, I had to take a break and they get on to me because I tried to take a break or rest up so I can do my job. They well, we can't have you do this because you slow and we need this stuff done right then and there.

[ALJ]: You've worked some. It's not like you've never worked. You did work some.

[Gamble]: I worked a bunch of time on a farm and they talked, that's what I'm saying. They want to say I'm slow and everything else and I can't keep up.

\*\*\*

[Plaintiff's Counsel]: When you have worked in the past, how have you done with the job duties they want you to do?

[Gamble]: Because I got somebody, they have somebody to help me train me a little bit, and then they cut it off and leave me by myself. They say well, it looked like you can do it on your own. When I do it, then they come back and say, well, this ain't right.
      They get mad at me and start cussing me and all this stuff. I don't put up with that. I can't help it if I can't do it right. You all show me that way, then you all get on to me and I do it. Then they get on to me again.

[Plaintiff's Counsel]: You said that you had some trouble with keeping up in the past. What job was that on?

[Gamble]: The farm work, some of the farm work, some factory works I done and this tree service. I used to help a guy on tree service. He's always complaining I'm too slow; I need to hurry up.

(Tr. 30, 36.)

Gamble's job history is not inconsistent with his low IQ scores. As Gamble points out in his brief, he earned substantial gainful activity in only four of the fifteen years before his onset date, working for a lumber yard and cleaning at a gas station. (Tr. 153-56.) Gamble's testimony reveals that he had difficulty maintaining employment because he was unable to perform the tasks of his job properly or at an appropriate pace. Further, it is Gamble's argument that the onset and worsening of his physical impairment, in conjunction with his long-standing intellectual impairment, supports a finding that he meets or equals Listing 12.05C notwithstanding his ability to sporadically perform unskilled labor jobs in the past.

The ALJ also cited Gamble's ability to care for his personal needs, cook, do laundry, shop for groceries, and spend time with friends as inconsistent with his low IQ scores. Although these daily activities are relevant in determining the validity of his IQ scores and any deficits in adaptive functioning, the record also shows Gamble is unable to read and write, relies on his father to read his mail, does not have a checking account or know how to write checks, was only able to obtain a driver's license by having someone read the test questions to him, and was unable to complete his application for benefits.

The Court finds that the ALJ's decision that Gamble did not meet or equal listing 12.05C is not supported by substantial evidence. Contrary to the ALJ's finding, the record shows that Gamble was tested by multiple examiners and found to have IQ scores in the range of 60 to 70, lending support to the first element of listing 12.05C. Next, the finding that Gamble's degenerative disc disease was a severe impairment satisfies the second element of listing 12.05C. Finally, despite the ALJ finding that there was "minimal information" in the file regarding Gamble's learning disorder, Gamble's educational records reveal he performed eight years below

grade level, consistent with his low IQ scores. This evidence tends to support the third element for listing 12.05C, "onset of intellectual and adaptive functioning disability before age twenty-two." *Lott*, 772 F.3d at 550.

Independent of the claimant's burden at any step of the analysis, and regardless of whether the claimant is represented by counsel, the ALJ has an established duty to develop a full and fair record, because a hearing before an ALJ is deemed a non-adversarial proceeding. *Wilcutts v. Apfel,* 143 F.3d 1134, 1137–38 (8th Cir.1998). When additional evidence might alter the outcome of a disability determination, the ALJ has a duty to elicit such evidence. *Id.* This duty may include seeking additional evidence or clarification from treating physicians if portions of the medical record that are crucial to the plaintiff's claim are undeveloped. *Snead v. Barnhart,* 360 F.3d 834, 838–39 (8th Cir. 2004). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995).

The ALJ and the state agency medical expert both cited the lack of evidence in the record regarding Gamble's intellectual functioning in finding that Gamble's claim should be denied. The undersigned has found that the ALJ's determination is not supported by substantial evidence because the record contains Listing-level IQ scores and educational records consistent with these scores prior to the time Gamble attained the age of twenty-two. To the extent additional medical evidence is required to determine whether Gamble satisfies the requirements of Listing 12.05C, the ALJ has the duty to obtain such evidence.

Thus, this case must be remanded for the ALJ to assess Gamble's different IQ scores, and provide legitimate reasons for his assessment of those scores; discuss Gamble's educational records; obtain additional evidence, if necessary, regarding Gamble's level of intellectual

functioning; and determine whether Plaintiff satisfies Listing 12.05C. *See Muncy,* 247 F.3d at 735 (remanding and directing the Commissioner "to enter specific findings detailing why [the claimant's] first IQ score should not be adopted as the controlling score"); *Murphy,* 2013 WL 4198345, at *4 (remanding for the ALJ to perform "a proper and complete analysis" of the validity of conflicting IQ scores for purposes of assessing whether Plaintiff met the requirements of Listing 12.05C).

## V. Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order.

Dated this 15th day of March, 2017.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE